224 P.2d 651

**FRYE et al., constituting Board of Super-visors of Maricopa County v. SOUTH PHOENIX VOLUNTEER FIRE CO.**

No. 5332.

Supreme Court of Arizona.

Nov. 13, 1950.

Warren L. McCarthy, County Atty., Anthony O. Jones, Deputy Co. Atty., Phoenix, for appellants.

Robert C. Moore, of Phoenix, for appellee.

PHELPS, Justice.

The South Phoenix Volunteer Fire Department, plaintiff-appellee, seeks to compel the members of the Maricopa County Board of Supervisors, defendants-appellants, to pay to appellee a sum certain as fixed by the provisions of section 16-2007, A.C.A. 1939 as amended, for required equipment of the fire department and its maintenance, claiming that the provisions in said section relating thereto are mandatory. Upon the refusal of the board to make such payment the company instituted this action in mandamus. After a hearing, judgment was entered by the court granting the writ requiring appellants to make the payment claimed by the company. From this judgment the board appeals and assigns the order and entry of such judgment as error.

The question presented to the trial court, as well as here, is one of law and the results reached by this court must rest exclusively upon the interpretation of section 16-2007, as amended, supra. This section as amended reads as follows:

"16-2007. *County Contribution—Estimate of expenses and tax levy.*—The board of supervisors *may* ascertain the value of all vehicles registered between January 1 and July 1 of each year from within the boundaries of the territory described in the order of the board authorizing the

organization of a volunteer fire company, and on or before July 10 of each year *may* pay into the volunteer fire company fund of such territory an amount equal to one and two-tenths [1.2] per cent of such value. Not more than ten [10] days after the organization of a volunteer fire company is perfected, and thereafter not later than July 10 of each year, the chief and the secretary-treasurer of such company *may* submit to the board of supervisors an estimate, certified by items, of the amount of money required for the equipment and maintenance of the company for the ensuing year, less the amount derived from the county as hereinabove provided. (Emphasis supplied.)

"The board *shall* approve the estimate or modify the same, and *shall* levy a tax, not to exceed twelve [12] mills on each dollar of taxable valuation, against all property situated within the boundaries of the territory described in the order of the board authorizing the organization of said company and appearing upon the last assessment roll. The levy *shall* be made and the taxes collected in the manner, at the time, and by the officers provided by law for the collection of state and county taxes. The county treasurer shall keep the money received from said taxes in a separate fund known as the 'Volunteer Fire Company Fund' of the town or settlement for which collected." (Emphasis supplied.)

The organization of volunteer fire companies was first provided for under the provisions of chapter 69, Session Laws of 1913, Third Special Session. The organization of such fire companies was first restricted to unincorporated towns but the law was amended by chapter 98, Session Laws of 1919 to include outside areas.

We may safely assume from the early enactment of this law and the provisions therein for the maintenance of such a company through taxation levied as other taxes are levied, at first only upon improvements on real property within the district but from 1919 to date levied on both real and personal property located therein, that the legislature deemed such organizations to be necessary for the protection of property in the densely populated areas. The law has, from its inception, made it mandatory that the cost and maintenance of the equipment of voluntary fire companies be borne by taxes levied on property within the territory benefitted thereby, and that the board was required to make a tax levy sufficient to cover such expenses not in excess, however, of seven (7) mills per taxable dollar value up until 1939 when the maximum levy was fixed at twelve (12) mills of each dollar of taxable value. In 1919 the law was amended to contain a provision requiring officers of the fire companies to furnish an estimate of the cost and maintenance of equipment used by it to the board of supervisors. This requirement was likewise made mandatory. The tax was levied upon that estimate until 1939 when the board of supervisors was empowered to modify

the estimate furnished by the officers of the company but the law as then amended still made it mandatory upon the board to levy the tax therein provided for based upon the estimate as approved by it. No other material changes were made in the law until in 1941 when the act was again amended to include the provisions above set out haec verba.

We believe the above historical background of the act is a proper matter for our consideration along with other factors in arriving at the intent of the legislature in amending the section thereof, here under consideration.

Appellants claim that the word "may" as used in the first paragraph of this section is permissive only and vests a discretion in the board to make the payment to the company for which provision is therein made, or refuse to make it as the judgment of its members dictates. The appellee on the other hand claims that the word "may" as used is mandatory and that if it is treated as permissive only the act is unconstitutional as being in violation of section 19, article 4, part 2 of the Arizona Constitution and of section 13, article 2 thereof. Section 19, article 4, part 2 so far as here material reads as follows:

"§ 19. [Local or special laws.]—No local or special laws shall be enacted in any of the following cases, that is to say:

"9. Assessment and collection of taxes.

"13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises.

"20. When a general law can be made applicable."

Article 2, section 13 of the constitution reads as follows:

"§ 13. [Equal operation of laws.]—No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

The meaning of the word "may" has been interpreted by this court in a number of cases, in some of which it was held to mean "must" while in others it was considered to be permissive only depending upon the legislative intent as ascertained by the court in applying the ordinary rules of statutory construction. It follows, therefore, that its meaning must always depend upon the legislative intent as determined by rules of statutory construction.

In determining whether the word "may" as used in the act under consideration is permissive or mandatory, if it cannot be gathered from the language used therein, the court must look to the words, context, subject-matter, effects and consequences as well as to the spirit and purpose of the law. Coggins v. Ely, 23 Ariz. 155, 202 P. 391 (citing cases). We must

also, if possible, give meaning to each word, clause or sentence, considered in the light of the entire act itself and the purpose for which it was enacted into law. State v. Airesearch Mfg. Co., Inc., 68 Ariz. 342, 206 P.2d 562, 567. We also said in that case:

" * * * The aim of the court likewise should be to give it (the law) a sensible construction such as will accomplish the legislative intent and if possible avoid an absurd conclusion or avoid making the statute invalid. * * *"

█ We find no difficulty in reaching a conclusion as to the purpose of the act itself. It recognized the need of fire protection in thickly settled communities outside the protection of a municipal fire department, both from the standpoint of the individual and the public. It intended that such protection to the people residing within the territory affected should be at public expense and provided that such expenses should be met by the levying of taxes upon the real and personal property located within such territory. It also intended that such volunteer fire companies should remain in existence and continue to function as such until dissolved in the manner provided in the act authorizing their creation, and not otherwise.

For some reason, about which it is neither the function nor the right of this court to inquire, the legislature in 1941 incorporated the provision for the payment to the company by the board of one and two-tenths (1.2) per cent of the value of all vehicles within the district and which are registered between January 1 and July 1 of each year. This amount is to be paid to the company, which together with the tax levy provided for, shall meet the budget requirements of the company for the ensuing year. The law expressly provides that the estimate of its expense for the ensuing year, required to be presented by the company to the board on or before July 10 of each year, must be arrived at after deducting the payment received from the board based upon the one and two-tenths (1.2) per cent of the value of vehicles within the district.

It will be observed that in the first paragraph under section 16-2007 as amended, supra, containing the provision here involved, it not only provides that the board of supervisors "may ascertain the value of all vehicles" and "may pay into the volunteer fire company fund * * * an amount equal to one and two-tenths [1.2] per cent of such value" but it also provides that "the chief and the secretary-treasurer of such company may submit to the board of supervisors an estimate, certified by items, of the amount of money required for the equipment and maintenance of the company for the ensuing year." (Emphasis supplied.)

█ Did the legislature intend to strike from the law a provision which it had contained since 1919, making it mandatory upon the chief and secretary-treasurer of the company to furnish the board an esti-

mate of the amount required for its equipment and its maintenance for the ensuing year and make it discretionary with such officers whether they would furnish such estimate or not? Did it intend that such officers *may* furnish such estimate on or before July 10 of each year or not as their whims may dictate? Did it intend by using the word "may" that the officers of the fire company may through carelessness defeat the purpose of the act and in effect bring about its dissolution by failing to furnish to the board an estimate of its expenses for the ensuing year? We think not. Such an interpretation would be absurd in the light of the purpose of the act; and in the light of the fact that it has been the law of this state since 1913 that estimates for the cost of county and city government for the ensuing year are required to be made and published prior to the levying of taxes for that year; and that county and city governments must operate within the budgets fixed by them based upon such estimates. Certainly unless the officers of the company furnish the board with an estimate of their expenses for the ensuing year the board would have no information upon which to base a tax levy in that district for defraying the expenses of the company. Therefore we hold that "may" as used in the act and as applied to the officers of the company is not permissive but is mandatory. If we hold that "may" must be construed as mandatory as to such officers there is no sound reason why we should declare it to be permissive, only, as it ap-

plies to the board. The very fact that the legislature set up no standards in the act by which the discretion of the board could be gauged in determining whether the board should pay or refuse to pay to the company an amount equal to one and two-tenths (1.2) per cent of the taxable value of the said vehicles in the district affected is not only persuasive, but in our opinion, is conclusive of its intent not to vest such discretion in the board. This is true for the reason that if there is no standard by which the discretion of the board may be measured, the power vested, if valid, is absolute and becomes arbitrary. Another reason is that courts are vested with the jurisdiction and power to grant relief from an abuse of discretion by an administrative body. But if the act sets up no standard by which the discretion may be measured there is no discretion to be abused and the court is without power to act other than to rule upon its constitutionality.

■ Counsel for plaintiff urges that if "may" as used is held to be permissive the act is unconstitutional. We agree with this contention. As we have observed, the act does not pretend to fix a standard by which the board may determine whether or not the so-called contribution to the company shall be made or withheld. It does not pretend to make the board a fact-finding body upon which finding its judgment and discretion can be based. So far as the act itself is concerned the action of the board may be based upon the likes or dislikes of the

members of the board for the officers of the company; upon any whim or caprice of a majority of its members, or it may pay or refuse to pay such amount for no reason at all and as pointed out by counsel for appellees, if the word "may" is to be construed as being permissive the law is incomplete and in effect delegates to the members of the board the power to legislate by arbitrarily ordering payment in one case and denying it in another where the surrounding circumstances are identical, in other words by declaring the law to be one thing today and another thing tomorrow, thus resulting in the granting of special or exclusive privileges or immunities to one fire company which upon the same terms shall not equally belong to all fire companies organized under the act. And as above pointed out no redress is available through the courts on the ground of an abuse of discretion because the act fixes no standard by which the court can determine whether or not such discretion has been abused.

In Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854, 862, in discussing the question with reference to an attempt in an initiative measure to vest in an administrative body the power to regulate all conditions of employment in the state service we said: "* * * May the state, in order to accomplish this, transfer to an administrative body the unlimited power to use its judgment and discretion in determining what conditions shall be rectified and how this shall be accomplished? We have no hesitation in saying such is legally impossible. Legislation may pass to administrative boards or officials the right or power to find facts or conditions properly prescribed under which the law as passed will or will not operate, but it may not permit the board to say what the law shall be. * * * Under the unlimited and unrestrained powers here given, the board can require employees to work in unsanitary or unsafe conditions. Probably they would not, but the constitutionality of a statute must be determined by what can be done under it rather than what might or might not be done. M. & M. Wood Working Co. v. State Industrial Acc. Comm., 176 Or. 35, 155 P.2d 933. * * *"

The court further said in that case: "* * * The powers given an administrative board must, by the provisions of the act, be surrounded by standards, limitations, and policies. Only within such boundaries may the board act. (Citing cases.)"

Applying the rule above set out to the legislation in the instant case we conclude that if the legislative intent was that the word "may" was intended to be permissive only we would be forced to hold that the act is unconstitutional because it delegates a power to the board not surrounded by standards, limitations and policies by which it may exercise a discretion.

It is our duty, however, to reconcile the language of the act with the provisions of the constitution, if possible, and if two interpretations may be given to the

language of the act, one resulting in its invalidity and the other in its validity the court must adopt the interpretation favoring its validity. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808; Stewart v. Robertson, 45 Ariz. 143, 40 P.2d 979.

The legislature had the power to require the board to supplement the tax levy, provided for in the act, to meet the requirements of the company for the cost and maintenance of its fire equipment for the ensuing year by contributing to the company an amount to be ascertained in any reasonable manner it may determine. It had the power also to make the payment of the amount ascertained mandatory upon the board or to vest in the board a discretion whether or not it would or should pay such amount. If it vests a discretion in the board, however, it must fix standards and limitations upon which such discretion may rest. Not having done so, we must presume that it intended to make it mandatory upon the board to pay to the company an amount equal to one and two-tenths (1.2) per cent of the value of vehicles registered in the territory between January 1 and July 1 of each year. Treating the language used as mandatory the act is constitutional.

We therefore hold that the act vests no discretion in the board and that the word "may" as used in the act means must.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD, and DE CONCINI, JJ., concur.