580 P.2d 1215

**BOARD OF COUNTY SUPERVISORS, SANTA CRUZ COUNTY, Appellant,**

v.

**RIO RICO VOLUNTEER FIRE DISTRICT, Appellee.**

**No. 2 CA–CIV 2742.**

Court of Appeals of Arizona, Division 2.

April 7, 1978.

Rehearing Denied May 11, 1978.

Review Denied June 13, 1978.

E. Leigh Larson, Santa Cruz County Atty. by Roberto C. Montiel, Chief Deputy County Atty., Nogales, for appellant.

Leslie A. Gifford, Nogales, for appellee.

## OPINION

HOWARD, Judge.

Appellee filed a special action in the trial court asking the court to order the board of supervisors to restore items which it had cut from appellee's budget. The trial court, after hearing testimony, ordered the board of supervisors to increase appellee's budget in the amount of $23,000, or, in the alternative, that appellee have judgment against the board in the sum of $23,000.

The facts show that pursuant to A.R.S. Sec. 9–1005(B) the appellee presented a budget estimate to the board of supervisors in the sum of $53,512. At a meeting of the board of supervisors held on July 19, 1977, the budget was reduced from $53,512 to $30,012. At this meeting Lester Babnew, the Chief of the Rio Rico Fire District, testified as to the sufficiency of the budget proposed by appellee. The board of supervisors reduced the $2,000 requested for training aids and expenses to $1,500. It also reduced a request of $18,000 for a communications network to $4,000, and eliminated the sums which were requested to lease a fire tanker truck.

Mr. William Baffert, Chairman of the board of supervisors, testified at trial that the board's decision on the budget was based solely on the testimony given to the board at meetings conducted on July 15 and July 19. He explained why the board did not give the district the money it requested for a new communications system. His explanation was based upon the testimony given to the board. Under the present communications system the base station is located at a hotel. Anyone who spotted a fire phoned the hotel which was manned by a clerk 24 hours a day, 7 days a week, and the clerk contacted people who had pagers. The hotel clerk also had a list of people to call. Furthermore, the hotel had available a radio which connected with the security system which was in operation 24 hours a day. The fire district wanted to change the location of the base station to Mr. Babnew's house. Since it was known to the board that Mr. Babnew was in the produce business, worked in Nogales and wasn't at his home all the time, the members of the board thought that it would not be right to locate the base station at his house. Based on the testimony of the witnesses, including many people who objected to the fire district's budget, the board concluded that the present system was excellent and adequate and that the district could lease/purchase additional communication systems with an expenditure of $4,000, thus expanding the present system. (This sum would purchase additional pagers.)

As far as the fire tanker truck was concerned, no one testified before the board

that it was not repairable. In fact, there was an item in the budget for its repair.

At the trial, Mr. Babnew testified that he felt the budget submitted was the minimum expense needed for the following year. He did not think that their present fire pumper truck was sufficient. The trial court also permitted a Mr. Zuniga to testify as an "expert witness". He never testified before the board of supervisors. It was his opinion that the tanker truck presently owned was obsolete. This opinion was concurred in by Mr. Sheldon, the Chief of the Rio Rico Fire Department. He admitted, however, that although he did have the opportunity to appear before the board of supervisors, he did not at that time give any opinion with regard to the fire truck.

The trial court, after hearing the evidence, ruled in appellee's favor and in its final order stated:

"The case of *Frye v. South Phoenix Volunteer Fire Co.*, 71 Ariz. 163, 224 P.2d 651, is almost on all fours with the issue in this proceeding and is authority for the statement that courts are vested with jurisdiction and power to grant relief from abuse of discretion by an administrative body. It is further the authority that in instances of this nature, where the statute relied upon is an earlier enactment of the present statute, which is Section 9–105, it (the statute) does not pretend to make the board a fact finding body upon which its judgment and discretion can be based.

The proviso in the statute vesting in the board of supervisors authority to 'modify' does not, in the Court's opinion, constitute authority to emasculate the proposed budget of the Fire District, which it had done in this instance without any substantial evidence presented to the Board to warrant such a drastic reduction. . . ."

We first turn to A.R.S. Sec. 9–1005, which sets forth the method of funding a volunteer fire district. It states:

"A. The board of supervisors shall ascertain from the current tax rolls the taxable valuation of all property within the boundaries of the territory described in the order of the board authorizing the organization of a volunteer fire district and on or before July 10 of each year shall pay into the volunteer fire district fund of such territory an amount equal to sixty cents per one hundred dollars taxable valuation from the county general fund and such payment shall not exceed forty per cent of the annual adopted budget of the volunteer fire district. The county payment computed by the above formula shall not exceed by more than ten per cent the current county contribution to the fire district or district board. Such payment shall not be less than the current county contribution to the district.

B. Not more than ten days after the perfection of the organization of a volunteer fire district, and thereafter not later than July 10 of each year, the chief and the secretary-treasurer of the district or if there is a district board, the chairman of such board shall submit to the board of supervisors an estimate, certified by items, of the amount of money required for the equipment and maintenance of the district for the ensuing year, less the amount derived from the county as provided by subsection A of this section. The estimate may also include amounts necessary to pay the reasonable value of organizational and legal services and expenses rendered or paid by others in the fiscal year immediately prior to the fiscal year for which the estimate is submitted, if the district has in advance expressly authorized or has after the fact expressly ratified such services or expenses, except the district may not pay more than a total of one thousand five hundred dollars for such services or expenses in any one fiscal year.

C. *The board shall approve or modify the estimate* and shall levy a tax, not to exceed two dollars per one hundred dol-

lars of taxable valuation, against all property situated within the boundaries of the territory described in the order of the board authorizing the organization of the district and appearing upon the last assessment roll. The levy shall be made and the taxes collected in the manner at the time and by the officers provided by law for the collection of state and county taxes.

D. The county treasurer shall keep the money received from such taxes in a separate fund known as the 'Volunteer Fire District Fund' of the town or settlement for which collected. Any surplus remaining in the fund at the end of the fiscal year shall be credited to the 'Volunteer Fire District Fund' of the town or settlement for which collected for the succeeding fiscal year." (Emphasis added)

It is evident that the ultimate fiscal responsibility under the statute lies with the board of supervisors. It has the power in the exercise of its responsibility to the taxpayers of the fire district to reject items included in the budget. This leads us to appellant's first contention which is that the trial court erred in denying its motion to dismiss based upon the discretionary nature of the duty imposed by A.R.S. Sec. 9–1005(C). In other words, "no mandamus for a discretionary act". We do not agree. Appellee alleged in its special action petition that the action of the board in not approving its estimated budget was arbitrary and capricious. In Arizona there is an exception to the rule of "no mandamus for a discretionary act". As observed by Professor Davis in his article, "Arizona Administrative Mandamus", 9 Ariz.L.Rev. 1 (1967), this exception almost engulfs the rule itself. The exception is that where an officer has acted arbitrarily or in abuse of discretion, mandamus can be available to require him to act properly. *Stevenson v. Arizona Board of Pardons and Paroles*, 109 Ariz. 412, 510 P.2d 384 (1973); *Rhodes v. Clark*, 92 Ariz. 31, 373 P.2d 348 (1962).

■ As far as the merits are concerned, we believe the trial court has read too much

into *Frye v. South Phoenix Volunteer Fire Co.*, supra. The issue in that case was whether the precursor of A.R.S. Sec. 9–1005(A), to-wit the first paragraph of Sec. 16–2007, Arizona Code (1939), was mandatory or discretionary with the board. Under the 1939 Code, the section read:

"The board of supervisors *may* ascertain the value of all vehicles registered between January 1 and July 1 of each year from within the boundaries of the territory described in the order of the board authorizing the organization of a volunteer fire company, and on or before July 10 of each year *may* pay into the volunteer fire company fund of such territory an amount equal to one and two-tenths [1.2] per cent of such value. . ." (Emphasis added)

The question was whether the word "may" was discretionary or mandatory and the trial court held that the word was not discretionary and the board of supervisors had to ascertain the value of the vehicles and had to pay that money over to the fire district. It had no choice to do otherwise. That is not the issue involved in the case sub judice. *Frye* does not stand for the proposition that the board has no fact finding function or duty when it examines the budget that has been submitted under A.R.S. Sec. 9–1005(B). Since the appellee alleged that the board of supervisors was arbitrary and capricious, the burden was upon it to show clearly that the board had acted in abuse of its discretion. *Rhodes v. Clark*, supra.

■ Appellant contends that the trial court erred in allowing, over objection, testimony which was not presented to the board of supervisors. We do not decide this issue since the record clearly demonstrates no abuse of discretion on the part of the board of supervisors in any event. The amount by which the board of supervisors reduced the estimated budget is of no particular moment. If reasonable men could differ as to the propriety of the action taken by the board of supervisors, then it

cannot be said it abused its discretion. The trial court cannot substitute its judgment in cases such as this for that of the board of supervisors. The board did not act arbitrarily or capriciously. Based upon the testimony of Mr. Baffert, there was a reason for its rejection of the budget and neither this court nor the trial court can gainsay the reasonableness of action taken by the board of supervisors. The trial court does not act as a "Super Board of Supervisors".

The judgment is reversed and the trial court is ordered to dismiss the special action with prejudice.

RICHMOND, C. J., and ALICE TRUMAN, Superior Court Judge, concurring.

NOTE: Judge James D. Hathaway having requested that he be relieved from consideration of this matter, Judge Alice Truman was called to sit in his stead and participate in the determination of this decision.