160 P.3d 1216

**YES ON PROP 200, an Arizona political committee; Randall Pullen, an Arizona resident and citizen; Federation for American Immigration Reform, a tax-exempt corporation of the District of Columbia, Willa Key, George R. Childers, Robert K. Park, Arizona residents and citizens, Plaintiffs/Appellants,**

**v.**

**Janet NAPOLITANO, Janice K. Brewer, Terry Goddard, in their official capacities as Arizona public officials, Defendants/Appellees.**

No. 1 CA–CV 05–235.

Court of Appeals of Arizona, Division 1, Department B.

June 28, 2007.

---

Law Offices of Charles M. Brewer, Ltd. by David L. Abney, Phoenix, Attorneys for Appellants.

Office of the Governor, by Timothy A. Nelson, Phoenix, Attorneys for Appellee Napolitano.

Terry Goddard, Attorney General, By Mary R. O'Grady, Susan Plimpton Segal, Steven A. LaMar, Phoenix, Attorneys for Appellees Brewer/Goddard.

## OPINION

SNOW, Judge.

¶ 1 Plaintiffs appeal the dismissal of their First Amended Verified Special Action Complaint and the denial of their Motion for Leave to File Second Amended Verified Special Action Complaint. For the reasons that follow, we affirm the trial court's dismissal of the statutory special action mandamus claims in the First Amended Complaint. We also affirm its determination that, to the extent the Second Amended Complaint seeks additional mandamus relief against the Governor, the Attorney General or the Secretary of State, it would be futile to allow such amendments. We reverse, however, the trial court's dismissal of the declaratory judgment action with the Governor as a named defendant. We also reverse its denial of the motion for leave to file the Second Amended Complaint to the extent it seeks to add as defendants to the declaratory judgment action four additional public officials who administer government benefit programs that Plaintiffs allege are subject to Proposition 200.[1] We thus remand to the trial court for further proceedings consistent with this opinion.

1. All complaints and proposed complaints at issue here name the Defendants in their official capacities only.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On November 2, 2004, Arizona voters adopted Proposition 200, the Arizona Taxpayer and Citizen Protection Act. Section six of that proposition, now codified as A.R.S. § 46–140.01 (2005), requires agencies of the state and local governments that administer "state and local public benefits that are not federally mandated" to verify the immigration status of applicants for benefits and report any discovered violations to federal immigration authorities.

¶ 3 Shortly after the proposition passed, the Attorney General issued Opinion of the Attorney General I04–010 ("I04–010") in response to a request from Anthony Rodgers, the Director of the Arizona Health Care Cost Containment System Administration ("AHCCCS"), to define "state and local public benefits" for the purposes of Proposition 200. The opinion concluded that Proposition 200 did not apply to AHCCCS benefits and many other state programs but applied only to those programs within Title 46 of the Arizona Revised Statutes "that qualify as state and local public benefits pursuant to federal law." A few days later, Plaintiffs filed this action alleging that the Attorney General too narrowly interpreted the scope of Proposition 200. Defendants responded by filing a motion to dismiss for failure to state a claim.

¶ 4 At about the same time, a separate challenge to the constitutionality of Proposition 200 was filed in federal court and that court issued a temporary restraining order precluding implementation of section six of the proposition.[2] When the Governor issued the proclamation declaring Proposition 200 the law of the State, she did so "subject to the terms and duration" of that temporary restraining order. Shortly thereafter the federal court lifted the temporary restraining order and denied the injunctive relief requested in the federal action. *Friendly House v. Napolitano,* No. CV 04–649 TUC DCB (D.Ariz. Dec. 22, 2004) (order).

2. While Proposition 200 contained other provisions, most notably pertaining to voting rights, the provisions pertaining to state and local benefits at issue here were contained in section six.

¶ 5 On the same day the federal court lifted its restraining order, December 22, 2004, the Governor issued Executive Order 2004–30 directing that "[a]ll Executive Branch agencies ... immediately implement A.R.S. § 46–140.01 ... to the full extent required by law as set forth in [Proposition 200], relevant judicial opinions, and the opinions of the Arizona Attorney General." [3]

¶ 6 In response to Defendants' motion to dismiss for failure to state a claim in this action, Plaintiffs filed their First Amended Complaint. The Defendants again moved to dismiss on the same grounds as stated in their original motion to dismiss. In partial response, Plaintiffs filed a Motion for Leave to File Second Amended Verified Special Action Complaint. The trial court dismissed the First Amended Complaint with prejudice for failure to state a claim and denied Plaintiffs' motion for leave to file the Second Amended Complaint. Plaintiffs timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 7 In reviewing a trial court's dismissal of a complaint for failure to state a claim, we accept the facts alleged in the complaint as true. *Fid. Sec. Life Ins. Co. v. State,* 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998). We review questions of law de novo and "resolve all reasonable inferences in favor of the plaintiffs." *McDonald v. City of Prescott,* 197 Ariz. 566, 567, ¶ 5, 5 P.3d 900, 901 (App.2000); *Aldabbagh v. Ariz. Dep't of Liquor Licenses & Control,* 162 Ariz. 415, 417–18, 783 P.2d 1207, 1209–10 (App.1989). We affirm the dismissal only if the plaintiffs "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fidelity,* 191 Ariz. at 224, ¶ 4, 954 P.2d at 582.

¶ 8 As the Defendants acknowledge in their brief, it appears that the Plaintiffs may seek both declaratory judgment relief and mandamus relief against all Defendants. We thus examine the mandamus claims and the declaratory judgment claim to determine whether Plaintiffs have complied with the minimal requirements for stating a claim as to each Defendant.

## MANDAMUS

¶ 9 Mandamus is a remedy used to compel a public officer to perform a duty required by law. A.R.S. § 12–2021 (2003); *Sears v. Hull,* 192 Ariz. 65, 68, ¶ 11, 961 P.2d 1013, 1016 (1998). But "[m]andamus 'does not lie if the public officer is not specifically required by law to perform the act.' " *Id.* (quoting *Bd. of Educ. v. Scottsdale Educ. Ass'n,* 109 Ariz. 342, 344, 509 P.2d 612, 614 (1973)). Presumably because the text of Proposition 200 explicitly authorizes residents of this state to bring any actions including mandamus actions to "remedy any violation of any provision of this section," A.R.S. § 46–140.01(C), Plaintiffs seek a declaratory judgment as part of their statutory special action for mandamus. That the proposition explicitly authorizes mandamus relief, however, does not establish that such an action is appropriate in every dispute pertaining to the statute. The action must also meet the general requirements for mandamus.

### A. The Secretary of State

¶ 10 Even broadly read, the First Amended Complaint does not contain any allegations that the Secretary of State failed to perform an act that she is required by law to perform. Thus, the trial court did not err in concluding that the First Amended Complaint fails to state a mandamus claim as to the Secretary of State.

### B. The Attorney General

¶ 11 The Plaintiffs assert that the Attorney General has violated a mandatory duty of his office by issuing I04–010. But, in issuing that opinion, the Attorney General performed a duty assigned to his office by statute. *See* A.R.S. § 41–193(A)(7) (2004) (stating that the Attorney General shall "[u]pon demand by [public officials] render a written

---

3. At that time, I04–010 was the only opinion interpreting Proposition 200. Since then the Attorney General has issued I05–009, which similarly interprets the proposition. No court has issued an opinion interpreting the statute's scope.

opinion upon any question of law relating to their offices"). The Plaintiffs' claim is that the Attorney General violated his duty by issuing a legally erroneous opinion.

¶ 12 Plaintiffs acknowledge that the Attorney General has some discretion in formulating the opinions he issues to public officers. They further acknowledge that generally a mandamus action cannot be used to compel a government employee to perform a function in a particular way if the official is granted any discretion about how to perform it. *Kahn v. Thompson,* 185 Ariz. 408, 411, 916 P.2d 1124, 1127 (App.1995); *see also Ariz. State Highway Comm'n v. Super. Ct.,* 81 Ariz. 74, 77, 299 P.2d 783, 785 (1956) (holding that mandamus may compel an officer to perform an act required by law that involves the exercise of discretion, but normally cannot compel how that discretion is exercised). When an official has discretion about how to perform a function, mandamus is available "to require him to act properly," only if the official abuses that discretion. *Bd. of County Supervisors v. Rio RICO Volunteer Fire Dep't,* 119 Ariz. 361, 364, 580 P.2d 1215, 1218 (App.1978); *Ariz. State Highway Comm'n.,* 81 Ariz. at 77, 299 P.2d at 785. Plaintiffs allege that the Attorney General abused his discretion in issuing an incorrect opinion.

¶ 13 We have held that a court abuses its discretion when it commits a legal error in the process of exercising its discretion. *See, e.g., Fuentes v. Fuentes,* 209 Ariz. 51, 56, ¶ 23, 97 P.3d 876, 881 (App.2004). Plaintiffs thus argue that they state a claim for mandamus against the Attorney General by alleging that he abused his discretion when he rendered I04–010 because it is legally erroneous. We reject this argument.

¶ 14 Although related, the responsibility to declare existing law and the responsibility to advise concerning it are separate and distinct. It is the responsibility of the courts to declare existing law. *San Carlos Apache Tribe v. Super. Ct. ex rel. County of Maricopa,* 193 Ariz. 195, 211, ¶ 37, 972 P.2d 179, 195 (1999) ("The power to define existing law, including common law, and to apply it to facts rests exclusively within the

judicial branch."); *Chevron Chem. Co. v. Super. Ct.,* 131 Ariz. 431, 440, 641 P.2d 1275, 1284 (1982) ("Under the doctrine of separation of powers, the judiciary has the exclusive power to declare 'existing law.' "). In contrast, it is the responsibility of the Attorney General to advise state government concerning the law when requested to do so. A.R.S. § 41–193(A)(7). It is because the function of courts is to declare existing law that they abuse their discretion when they make a legal error. Because the function of Attorneys General, however, is not to decide what the law is but merely opine about the law, the same principle does not necessarily apply.

¶ 15 If, as Plaintiffs suggest, a mandamus action could be brought to challenge the opinions of the Attorney General, upon such challenges, courts would effectively become direct legal advisors to the government. The courts would be compelled to decide previously unsettled legal questions as a necessary preliminary to determining whether the Attorney General's opinion on various matters were an abuse of discretion.

¶ 16 This would be an inappropriate usurpation by the courts of responsibility assigned to the Attorney General and, in our view, a violation of the separation of powers. Our system of government prohibits one branch of the government from exercising the powers granted to another branch of the government. Ariz. Const. art. 3; *Litchfield Elem. Sch. Dist. No. 79 v. Babbitt,* 125 Ariz. 215, 220, 608 P.2d 792, 797 (App.1980). We thus decline to determine on a writ of mandamus whether I04–010 is a correct interpretation of the law.

¶ 17 Plaintiffs alternatively argue that I04–010 constitutes an abuse of discretion because it is "contrary to reason, lacks a fair, solid and substantial basis and is not governed by any fixed rules or standards." They thus apparently argue that I04–010 is so deficient that it amounts to a complete failure of the Attorney General to comply with the obligation to issue an opinion. Even assuming that a decision issued by the Attorney General could be so deficient as to be a complete failure to fulfill the statutory obligation to issue an opinion, our review indi-

cates that, as a matter of law, such is not the case here.[4] Thus, the Attorney General has complied with the duty imposed by statute, and no action for mandamus lies to perform a duty that has already been completed.

¶ 18 Plaintiffs also request, pursuant to the mandamus power, that the courts direct "that the Arizona Attorney General withdraw the subject Attorney General's Opinion." Even assuming a court might invalidate the substance of I04–010, however, an action in mandamus cannot compel the Attorney General to perform an act unless he is required by law to perform it. *Sears,* 192 Ariz. at 68, ¶ 11, 961 P.2d at 1016.

¶ 19 Although the Attorney General may choose to withdraw an opinion, the Plaintiffs identify no legal obligation compelling the Attorney General to do so in this case. *Cf. Ruiz v. Hull,* 191 Ariz. 441, 459, ¶ 69, 957 P.2d 984, 1002 (1998) (rejecting the interpretation of a constitutional amendment in an Attorney General's opinion but not requiring its withdrawal). Plaintiffs' complaint does, at least implicitly, allege such a duty, but, in evaluating a motion to dismiss, we do not accept as true Plaintiffs' legal assertions about the mandatory duties of the Attorney General. *See Aldabbagh,* 162 Ariz. at 417, 783 P.2d at 1209 ("When testing a motion to dismiss for failure to state a claim, well-pleaded material allegations of the complaint are taken as admitted, but conclusions of law or unwarranted deductions of fact are not."). Our supreme court has clarified that the responsibilities and functions of the Attorney General come from the state constitution or statutes; the Attorney General has no authority arising from the common law. *State ex rel. Woods v. Block,* 189 Ariz. 269, 272, 942 P.2d 428, 431 (1997); *Gershon v. Broomfield,* 131 Ariz. 507, 508, 642 P.2d 852, 853 (1982); *Ariz. State Land Dep't v. McFate,* 87 Ariz. 139, 141–42, 348 P.2d 912, 914 (1960). We are, thus, not free to craft a mandatory obligation with which we can then compel the Attorney General to comply through the mandamus power.

¶ 20 Plaintiffs argue that because A.R.S. § 38–446 (2006) immunizes any public employee from personal liability "for acts done in his official capacity in good faith reliance on written opinions of the attorney general" unless the opinion is withdrawn, public employees who refuse to follow the requirements of Proposition 200 in administering public benefit programs will escape personal criminal liability by claiming good faith reliance on I04–010. Pursuant to the statute, the immunity only exists when the government employee has acted in good faith, however, and it would be a rare circumstance in which a public employee could rely in good faith on legal conclusions in an Attorney General's opinion that have been rejected by a court's binding interpretation of the statute in question. Should a court interpret Proposition 200 differently than does the Attorney General, the court's opinion decides the law, regardless of whether the Attorney General withdraws I04–010.

¶ 21 Nor does the immunity the statute grants prevent Plaintiffs from obtaining a judicial determination concerning the applicability of Proposition 200. The immunity statute only extends to the personal liability of government employees. It would in no way preclude a claim for declaratory relief as to whether the public benefits administered by those employees are covered by the statute, thus subjecting employees to the duties it imposes. *See, e.g., Maricopa County v. TWC Chandler,* 206 Ariz. 293, 294, 77 P.3d 468, 469 (Tax 2003) (holding that, while the members of the State Board of Equalization were personally immune from claims for money judgments, the Board was not immune from claims for declaratory relief); *see also Estate of Jones v. Sailes,* 10 Ariz.App. 480, 482–83, 460 P.2d 16, 18–19 (1969) (declaratory judgment action was available to determine life insurance beneficiaries even when probate action was not).

¶ 22 Plaintiffs further request that a writ of mandamus issue "requiring that the Arizona Attorney General formally and immediately advise the Governor—and all of

---

4. For the reasons stated above, we do not, in determining that the Attorney General has adequately complied with the duty to render an opinion, express an opinion regarding the advice given.

the various officials of the State of Arizona ...—that they are mandated to conduct eligibility verification for appropriate benefits and to promptly issue regulations and administrative directives in accordance with such advice, in consultation with the Attorney General."

¶ 23 Again, the Plaintiffs do not establish any obligation on the part of the Attorney General to render any particular advice to any government official absent a request by that official. The principal statute regulating the duties of the Attorney General only requires the Attorney General to give such advice "[u]pon demand by the legislature, or either house or any member thereof, any public officer of the state or a county attorney." A.R.S. § 41–193(A)(7). Absent an appropriate request, or separate statutory authority, which has not been pleaded or identified here, it would be no more appropriate for us to compel the Attorney General to give advice to the Governor than it would be for us to compel the Governor to ask for it.

¶ 24 Nor does the Attorney General have the ability, let alone the duty, to compel other state agencies or departments to make rules or regulations in connection with their operations. *State ex rel. Morrison v. Thomas,* 80 Ariz. 327, 332, 297 P.2d 624, 627 (1956). As our supreme court has made clear, "the Attorney General is not the proper person to decide the course of action which should be pursued by another public officer." *Santa Rita Mining Co. v. Dep't of Prop. Valuation,* 111 Ariz. 368, 370, 530 P.2d 360, 362 (1975) (quoting *Morrison,* 80 Ariz. at 337, 297 P.2d at 631 (Struckmeyer, J., dissenting)).

¶ 25 Absent clear statutory authority, the Attorney General has no power to compel action on the part of state agencies. Thus, no action for mandamus lies compelling the Attorney General to do so. The trial court, therefore, did not err in dismissing any mandamus claims or any proposed mandamus claims against the Attorney General.

### C. The Governor

¶ 26 To the extent that the First Amended Complaint can be read to allege that the Governor has adopted and implemented the Attorney General's interpretation of Proposition 200, such an allegation is still insufficient to state a claim for mandamus relief against the Governor. In *Sears,* the plaintiffs brought a statutory special action to enjoin the Governor from entering a gaming pact with the Salt River Pima–Maricopa Indian Community that the plaintiffs alleged violated the federal Indian Gaming Regulatory Act. 192 Ariz. at 67–68, ¶¶ 1, 6, 961 P.2d at 1015–16. In rejecting the attempted mandamus challenge, the supreme court noted:

> The most the [plaintiffs] can establish is that they disagree with the Governor's interpretation of [federal and state statutes].... That showing, if made, would not entitle the [plaintiffs] to mandamus relief. If we were to adopt the [plaintiffs'] argument, virtually any citizen could challenge any action of any public officer under the mandamus statute by claiming that the officer has failed to uphold or fulfill state or federal law, as interpreted by the dissatisfied plaintiff.

*Id.,* at 69, ¶ 14, 961 P.2d at 1017. Thus, according to *Sears,* mandamus is not an appropriate method to use to obtain a definition of duties that are otherwise subject to dispute. Plaintiffs thus raise no actionable mandamus claim against the Governor in the First Amended Complaint.

¶ 27 Plaintiffs' proposed Second Amended Complaint also seeks a writ of mandamus "directing that the Governor withdraw those portions of Executive Order 2004–030 that make the opinions of the Arizona Attorney General the arbiter of the meaning of Proposition 200 for all Executive Branch agencies of the State of Arizona." Such a request is not susceptible of mandamus relief because there is no circumstance under which the Governor can be compelled to edit or revise the text of her executive orders. The power to issue executive orders belongs uniquely to the Governor. *See* A.R.S. § 41–101(A) (2004) (stating that the Governor has the power to supervise executive branch officials); *see also State v. Hooker,* 128 Ariz. 479, 481, 626 P.2d 1111, 1113 (App.1981) (stating that a Governor's order is binding on lower executive branch officials).

While the court may in appropriate circumstances review the Governor's executive orders for compliance with the law, it is not the court's constitutional role to craft executive orders for the Governor. Thus, no action for mandamus lies to compel the Governor to edit her executive order.

¶ 28 In their briefing on appeal, Plaintiffs also argue that the Governor, by declaring Proposition 200 subject to the restraining order issued by the United States District Court for the District of Arizona in *Friendly House*, violated various sections of Article 4, part 1 of the Arizona Constitution because she did not proclaim as law that part of the initiative that became A.R.S. § 46–140.01. Not only is there no such claim either in the First or the proposed Second Amended Complaints, Plaintiffs misread the proclamation. The Governor did fully proclaim the proposition to be law on December 13, 2004, stating "I, Janet Napolitano, Governor of the State of Arizona, do hereby proclaim the initiative measure proposed to the voters in the form of Proposition 200 ... to be law subject to the terms and duration of the Temporary Restraining Order...." In recognizing the limits placed by the court's restraining order on Proposition 200, she was not herself placing such limitations on the declaration; she was merely recognizing, as she was required to do under the supremacy clause, what the federal court had done. *See* U.S. Const. art. VI cl. 2. Once the court removed its restraining order, the law had already been fully proclaimed. As a matter of law, the Governor's subsequent Executive Order No. 2004–30, directing how the proposition was to be implemented, did not constitute her proclamation of that law. We thus reject the Plaintiffs' assertion that the proposed Second Amended Complaint states a valid claim against the Governor to oblige her to reword her proclamation. Accordingly, the trial court did not err when it dismissed both any mandamus claims, and proposed mandamus claims, asserted against the Governor.

## THE DECLARATORY JUDGMENTS ACT

¶ 29 The Uniform Declaratory Judgments Act provides that "[a]ny person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." A.R.S. § 12–1832 (2003). While the Declaratory Judgments Act is remedial and should be liberally construed, A.R.S. § 12–1842 (2003), "the complaint must set forth sufficient facts to establish that there is a justiciable controversy." *Planned Parenthood Ctr. of Tucson, Inc. v. Marks*, 17 Ariz.App. 308, 310, 497 P.2d 534, 536 (1972). A controversy is not justiciable when a defendant has no power to deny the plaintiff's asserted interests. *Morris v. Fleming*, 128 Ariz. 271, 273, 625 P.2d 334, 336 (App.1980); *Riley v. Cochise County*, 10 Ariz.App. 55, 60, 455 P.2d 1005, 1010 (1969). In reviewing whether the Plaintiffs failed to state a claim for a declaratory judgment we examine the sufficiency of the claims as asserted in the complaint against each of the Defendants named.

### A. The Secretary of State

¶ 30 The complaint does not allege that the Secretary of State administers any state or local public benefit programs. Nor does it indicate any other way in which the Secretary of State may be depriving the Plaintiffs of any rights to which they are entitled under Proposition 200. We thus affirm the trial court's dismissal of the Secretary of State as a party to this action.

### B. The Attorney General

¶ 31 Nor does the complaint allege that the Attorney General administers public benefit programs. Rather it alleges that "Attorney General Goddard is responsible for the enforcement or implementation of the provisions of Proposition 200 by agencies of the State of Arizona and political subdivisions therein." The complaint further alleges that the Attorney General intended his restrictive opinion to be binding on state agencies. While acknowledging that "[o]pinions of the Attorney General are advisory," the complaint alleges that an Attorney General's opinion is "customarily followed by other state agencies and subdivisions" and that

"[c]ourts may and do often regarded [sic] them as authority."

¶ 32 As discussed above, however, the powers of the Attorney General as they pertain to other state agencies are "advisory only." The Attorney General does not have the power to compel state agencies to act. Cf. *McFate*, 87 Ariz. at 143, 348 P.2d at 915 (holding that the Attorney General, acting on his own initiative, could not challenge the legality of the actions of the State Land Department); *Santa Rita Mining Co.*, 111 Ariz. at 371, 530 P.2d at 363 (holding that the Attorney General could not appeal on behalf of the Department of Property Valuation when the director of that agency did not wish to appeal). In *McFate*, our supreme court observed that the executive authority to which the Attorney General was laying claim did not belong to that office, but rather to the Governor.

> The authority here claimed by the Attorney General has been delegated by our Constitution and statutes to the Governor. Under Article V, Section 4, of the Arizona Constitution, the Governor "shall take care that the laws be faithfully executed." A.R.S. § 41–101, subd. A provides that the Governor "shall supervise the official conduct of all executive and ministerial officers" (par. 1), . . . . Thus, the Governor alone, and not the Attorney General, is responsible for the supervision of the executive department and is obligated and empowered to protect the interests of the people and the State by taking care that the laws are faithfully executed.

87 Ariz. at 148, 348 P.2d at 918.

¶ 33 Furthermore, there is no statutory authority for the Attorney General to be a named party and to represent the State's interests in a declaratory judgment action when the constitutionality of a state statute is not being challenged. In cases in which the constitutionality of a statute is being challenged, the Declaratory Judgments Act requires that the Attorney General be served with a copy of the complaint, together with a claim of unconstitutionality, and be allowed to respond on behalf of the State. A.R.S. § 12–1841 (Supp.2006). Accordingly, Arizona courts have uniformly held that the Arizona Attorney General is an appropriate party to such cases because the Attorney General's participation is authorized by the Declaratory Judgments Act itself. *Ethington v. Wright*, 66 Ariz. 382, 388, 189 P.2d 209, 213 (1948); *City of Tucson v. Woods*, 191 Ariz. 523, 526–27, 959 P.2d 394, 397–98 (App. 1997). Here, Plaintiffs do not challenge the constitutionality of Proposition 200, however, nor have they complied with the requirements of A.R.S. § 12–1841 for challenging the constitutionality of a statute.

¶ 34 As Plaintiffs acknowledge in their complaint, the opinions of the Attorney General are not binding. They are advisory only. *Green v. Osborne*, 157 Ariz. 363, 365, 758 P.2d 138, 140 (1988). That such opinions are entitled to "respectful consideration" by the courts and governmental agencies, *see, e.g., Ruiz*, 191 Ariz. at 449, ¶ 28, 957 P.2d at 992, and may be approved by them, does not oblige either courts or agencies to accept them. Plaintiffs' allegations that such opinions are "customarily followed by other state agencies and subdivisions" and that the Attorney General intended his opinion to be binding do not transform what is only advice into a legal mandate or otherwise confer on the Attorney General the power to deny Plaintiffs' interests under Proposition 200. Thus, Plaintiffs' allegations are, as a matter of law, insufficient to make the Attorney General a defendant in this declaratory judgment action. Nor do any of the factual or legal allegations that Plaintiffs seek to add in the proposed Second Amended Complaint succeed in stating a cause of action for declaratory judgment against the Attorney General. We thus affirm the trial court's dismissal of the Attorney General as a party to this action.

## C. The Governor

¶ 35 Unlike the Attorney General, the Governor has the constitutional obligation to "take care that the laws be faithfully executed" and to "transact all executive business with the officers of the government." Ariz. Const. art. 5, § 4. By statute, "[t]he governor . . . [s]hall supervise the official conduct of all executive and ministerial officers." A.R.S. § 41–101(A)(1) (2004).

"[T]he Governor ... is responsible for the supervision of the executive department and is obligated and empowered to protect the interests of the people and the State by taking care that the laws are faithfully executed." *McFate,* 87 Ariz. at 148, 348 P.2d at 918. As a consequence, "[t]he governor's order [is] the highest executive voice within this state and [may] not be ignored by a lesser officer of the executive branch." *Hooker,* 128 Ariz. at 481, 626 P.2d at 1113 (App.1981).

 ¶ 36 To successfully bring a declaratory judgment action challenging the State's implementation of Proposition 200, Plaintiffs must name as a defendant an entity or official that has the ability to control the implementation of that proposition. *See Morris,* 128 Ariz. at 273, 625 P.2d at 336. In naming the Governor, the Plaintiffs have named an appropriate official. In fact, the Governor instructed state agencies to "immediately implement A.R.S. § 46–140.01, as enacted by Proposition 200, to the full extent required by law as set forth in the Proposition, relevant judicial opinions, and *the opinions of the Arizona Attorney General.*" (Emphasis added.) By directing that state agencies follow the opinions of the Attorney General in the implementation of Proposition 200, the Executive Order compelled a result that the Attorney General himself was powerless to compel. The Defendants conceded as much at oral argument.

¶ 37 Even had the Governor's order not specifically directed state agencies to follow the opinion of the Attorney General, however, the Governor is the chief executive of the state. She has the power to direct or to change how the executive branch of the State implements a statute. It is, therefore, a common occurrence that the Governor, as the chief executive officer of the State, is the named party in challenges to the implementation of a new proposition or act in either state or federal court. *See, e.g., Yavapai–Prescott Indian Tribe v. Ariz.,* 796 F.Supp. 1292 (D.Ariz.1992) (naming the Governor as

defendant in action seeking state compliance with the Indian Gaming Regulatory Act); *Ruiz,* 191 Ariz. at 441, 957 P.2d at 984 (naming the Governor as defendant in action seeking to declare an English-only amendment unconstitutional); *Litchfield,* 125 Ariz. at 215, 608 P.2d at 792 (naming the Governor as defendant in a declaratory judgment action alleging that statute should not be interpreted to allow Governor to select prison location).

 ¶ 38 In this instance, the First Amended Complaint alleges that: "Governor Napolitano is responsible for the implementation of Proposition 200 by all executive agencies of the State of Arizona." It further alleges, that "[t]o date, on information and belief, Arizona state and local agencies administering state and local public benefits have uniformly followed [I04–010] in identifying the benefits to which the Proposition 200, § 6 verification of eligibility requirement will or will not apply." It alleges at great length that this Attorney General's opinion is an incorrect interpretation of the proposition, and thus not in compliance with the law, and then requests a "declaratory judgment that the term 'state and local public benefits not mandated by federal law' in A.R.S. § 46–140.1 applies to all benefits described in [a federal statute], regardless of which particular state or local government agency administers or regulates the provision of such benefits."

 ¶ 39 In a notice-pleading state, such as Arizona, "a complaint need only have 'a statement of the ground upon which the court's jurisdiction depends, a statement of the claim showing that the pleader is entitled to relief and a demand for judgment.' " *Rowland v. Kellogg Brown & Root Inc.,* 210 Ariz. 530, 533, ¶ 10, 115 P.3d 124, 127 (App. 2005) (quoting *Morn v. City of Phoenix,* 152 Ariz. 164, 166, 730 P.2d 873, 875 (App.1986)). The allegations in the First Amended Complaint set forth sufficient facts to establish a real dispute based upon an actual controversy between the Plaintiffs and the Governor.[5]

5. In addition to two organizations, Plaintiffs include four Arizona residents—Randall Pullen, Willa Key, George R. Childress and Robert D. Park. Proposition 200 provides that "[a]ny person who is a resident of this state shall have standing in any court of record to bring suit against any agent or agency of this state or its political subdivisions to remedy any violation of

*See Planned Parenthood,* 17 Ariz.App. at 310, 497 P.2d at 536. Thus, the Plaintiffs sufficiently alleged a justiciable dispute over which the court may assume jurisdiction pursuant to the Declaratory Judgments Act. The trial court thus erred in dismissing this aspect of the declaratory judgment action.

## THE MOTION FOR LEAVE TO AMEND

¶ 40 Plaintiffs moved for leave to file their Second Amended Complaint within three months after they filed their initial suit and before the Defendants filed any answer. The trial court ultimately denied this motion for leave to amend, finding "that it would be futile to grant the motion to amend." While leave to amend may be denied when the proposed amendment is futile, *Walls v. Ariz. Dep't of Pub. Safety,* 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (App.1991), it "should be granted 'if the underlying facts or circumstances relied upon ... may be a proper subject of relief.' " *MacCollum v. Perkinson,* 185 Ariz. 179, 913 P.2d 1097 (App.1996) (quoting *Spitz v. Bache & Co.,* 122 Ariz. 530, 531, 596 P.2d 365, 366 (1979)); *see also* Ariz. R. Civ. P. 15(a).

¶ 41 As explained above, we agree with the trial court's conclusion that the proposed Second Amended Complaint was futile insofar as it attempted to state a claim against the Secretary of State or the Attorney General, or to restate a mandamus claim against the Governor seeking to strike portions of her executive order. We disagree, however, that the amended complaint would be futile to the extent that it sought to add four additional government officers as defendants to the action or continue the declaratory claim against the Governor.

¶ 42 In the Second Amended Complaint, Plaintiffs sought to add as defendants the Director of the Arizona Department of Housing ("ADOH"), the Director and Deputy Director of Administration of the Arizona Department of Health Services ("ADHS"), and the Director of the Arizona Department of Economic Security ("ADES") in their official

capacities. The complaint specifically alleged that the agencies that were directed by the proposed defendants administered programs that were subject to Proposition 200. The complaint further alleged that the proposed defendants instructed their employees that Proposition 200 did not apply to those programs, with the exception of a few ADES programs, and that, therefore, the proposed defendants did not follow the requirements of Proposition 200 in administering programs that were subject to it. Plaintiffs then requested a declaratory judgment that Proposition 200 applies to programs administered by the three agencies and injunctive relief requiring those administering the programs to comply with Proposition 200.

¶ 43 Such allegations set forth sufficient facts to establish a real dispute based upon an actual controversy. *See Planned Parenthood,* 17 Ariz.App. at 310, 497 P.2d at 536. Accordingly, the causes of action the Plaintiffs seek to add against the proposed additional defendants were not futile, and it was error for the trial court to deny Plaintiffs' motion for leave to amend in this respect. We thus reverse the trial court's denial of leave to amend the First Amended Complaint with respect to the claims against the Directors of ADOH and ADES, and the Director and Deputy Director of ADHS and the declaratory judgment claim against the Governor.

## ATTORNEYS' FEES

¶ 44 Plaintiffs have requested attorneys' fees pursuant to A.R.S. § 12–348(A)(4) (2003) and the private attorney general doctrine. Attorneys' fees are awarded under A.R.S. § 12–348(A)(4) when a party "prevails by an adjudication on the merits in ... a special action proceeding brought by the party to challenge an action by the state against the party." Under the private attorney general doctrine, a court may, in its discretion, "award attorneys' fees to a party who has vindicated a right that: 1) benefits a large number of people; 2) requires private en-

any provision of this section, including an action for mandamus." A.R.S. § 46–140.01(C). As a result, the State apparently concedes that the Plaintiffs have standing to bring suit. Its argu-

ment is that Plaintiffs nevertheless fail to state a claim. Because the Defendants do not challenge the standing of the Plaintiffs to bring suit, we do not address this issue.

forcement; and 3) is of societal importance." *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). Because we have not ruled on the merits of Plaintiffs' case, we decline to award attorneys' fees. Plaintiffs may request fees, including fees incurred on appeal, from the superior court if they succeed on the merits.

### CONCLUSION

¶ 45 For the foregoing reasons, we affirm the trial court's decision dismissing Plaintiffs' mandamus claims. We reverse the trial court's dismissal of Plaintiffs' declaratory judgment action against the Governor and the trial court's denial of Plaintiffs' motion for leave to file the Second Amended Complaint as detailed above. We thus remand for proceedings consistent with this opinion.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge,[6] and ANN A. SCOTT TIMMER, Judge.

**6.** The Honorable Jefferson L. Lankford, Retired, is authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Article 6, § 3 of the Arizona Constitution and Administrative Order No. 2007–17.